BEFORE THE FIRST DIVISION, APRIL 27, 1950

**No. 54274.**—J. F. Fitzgerald, Jr. *v.* United States, protest 136695–K (New York).

MOLLISON, Judge: The merchandise the subject of this protest consists of articles described on the invoices as "artificial buttonnieres" and as "Bottonnieres made of feathers." They were assessed with duty at the rate of 60 percent ad valorem under the provision in paragraph 1518 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1518) for artificial flowers composed wholly or in chief value of materials other than those particularly specified in the paragraph. The protest claim chiefly relied upon is for duty at the rate of 40 percent ad valorem under the provision in the same paragraph and act, as modified by the trade agreement with the United Kingdom reported in T. D. 49753, providing for boutonnieres composed wholly or in chief value of feathers. Other claims are made in the protest, which, although not abandoned, were not pressed.

The issue has been resolved to the single question of whether the articles involved are boutonnieres within the meaning of the term as used in paragraph 1518, *supra,* as modified.

Exhibits representative of the imported merchandise are before us as illustrative exhibits A-1 to A-5, inclusive. They consist of what are obviously artificial flowers, the petal and leaf portions of which are made of feathers, some white and some colored, the stem portions being of wire, wrapped in green paper. Illustrative exhibits A-2 and A-4 consist of a single flower about 3 inches long, while illustrative exhibits A-1 and A-3 consist of three and four flowers, respectively, upon single stems, measuring about 7 inches in length, and illustrative exhibit A-5 consists of a single flower with a bud, both upon a single stem, and measuring about 7 inches in length. The articles are very cleverly made and pleasing to the eye, and while probably not intended to represent any particular flowers they do suggest flowers in a conventional sense.

There is no serious dispute as to the facts. The evidence offered on behalf of the plaintiff establishes that the smaller, single flowers represented by illustrative exhibits A-2 and A-4 are worn by men by placing the stem through the buttonhole of the lapel of the jacket, as boutonnieres are worn, and that the larger clusters of flowers represented by illustrative exhibits A-1, A-3, and A-5 are worn by women by pinning the same to the lapel of the jacket of a suit or to a similar position on a dress. It was established that the jackets of women's suits do not customarily have buttonholes, as those of men's suits do.

The evidence also establishes that the articles at bar were ordered abroad and sold in the United States as boutonnieres, and that they are chiefly, if not exclusively, used in the manner that boutonnieres are used.

In the brief filed on behalf of the plaintiff the following dictionary definitions of the word "boutonniere" are cited—

Funk & Wagnalls New Standard Dictionary, 1942:

A buttonhole-bouquet.

Webster's New International Dictionary, 2d ed., 1945:

A flower or bouquet worn in a buttonhole; loosely, a bouquet.

New Century Dictionary, 1946:

A buttonhole bouquet.

Funk & Wagnalls Practical Standard Dictionary:

A buttonhole-bouquet.

In the brief filed on behalf of the defendant it is pointed out that a majority of these authorities define "boutonniere" as a bouquet, which in turn is defined by the same authorities as a "number" or a "bunch" of flowers, that is to say, flowers in the plural. It is also pointed out that all the authorities agree that a boutonniere is worn in the buttonhole. From this it is argued on behalf of the defendant that the articles represented by illustrative exhibits A-2 and A-4, consisting of single flowers which are used by placing the stem through the buttonhole of the lapel on men's suits, are nevertheless not boutonnieres since by definition boutonnieres consist of more than one flower. It is also argued that the articles represented by illustrative exhibits A-1, A-3, and A-5 are not boutonnieres for the reason that although they consist of multiple flowers or buds they are not worn in the buttonhole, but by pinning on the lapel. It is further argued that even if one or the other type of article should be held to come within the scope of the term "boutonniere" nevertheless no judgment can be rendered in favor of the plaintiff for the reason that the articles were not segregated into types, as required in the case of commingled merchandise under section 508 of the Tariff Act of 1930.

We are of the opinion, however, that all of the merchandise before us properly responds to the term "boutonnieres" as commonly used in this country. As put by one of the witnesses for the plaintiff, a boutonniere "is a little flower to wear in your buttonhole * * * or the equivalent of your buttonhole, if you don't have one." They may be worn by men as well as by women, and may have one or more flowers or buds depending upon the wearer's choice. These are common experiences, whether or not they are strictly reflected in lexicographers' definitions. The important feature of boutonnieres is the location of wearing, i. e., upon the lapel about the place of the buttonhole, or in an equivalent place upon a dress or garment which has no lapel. The evidence clearly shows that the articles at bar all were to be used in that fashion, and they are accordingly entitled to classification as boutonnieres.

Judgment will therefore issue sustaining the protest claim for duty at the rate of 40 percent ad valorem under paragraph 1518, as modified, accordingly.